May it please the Court. I'm Michael J. Lockerbie, representing the appellant, Can-Am Fuel Distribution, along with my colleague, Daniel J. Oates, and present in the courtroom this morning are the members of the McCallum family, the owners and operators of the service station across the river in Vancouver that until recently was known as Dinah Marta Fisher's Landing. And I'd like to, with the Court's permission, reserve five minutes for rebuttal. Thank you. The panel members see, of course, many more briefs than I do in my practice. Most of the ones I see, you get to the conclusion and the brief kind of peters out. It says, for the reasons stated herein, appellant or appellee respectfully requests XYZ. In this case, Can-Am, of course, had the last word as the appellant. And this reply brief actually ended with three sentences in the conclusion that state what this case is all about. And those three sentences are as follows. The fact that Sinclair now has its own refinery in the area is not a proper basis for termination or non-renewal of the sublicense under the PMPA. Although Sinclair disputes that it is Can-Am's franchisor, it has never contended that the sublicense is not subject to the PMPA. Finding no PMPA franchise in a license to use a refiner's trademark granted to a motor fuel distributor and retailer, and of course, in this case, Can-Am was both, is unprecedented. Then Can-Am's conclusion ends with the boilerplate, respectfully requesting that the preliminary injunction order be reversed. Let me see if I, I want to set up where we are in this case, because it leads into my question. The district court granted a motion to dismiss by both Glovis and Sinclair of the PMPA claims, correct? It did. Okay, and I want to get back to that in a second. And then there was a later application for preliminary injunction. Actually, Your Honor. Whether it was an application. Well, the motion for preliminary injunction was actually filed before the. I'm so, that's why, that's why I changed my question. There was a motion for preliminary injunction, and when the judge got to ruling on that motion, he said, I'm not going to deal with the PMPA claims because I've already dismissed them, and then I'll, I'll deal with the other claims and I'll deny the injunction, correct? That's, that's what he said, Your Honor, and when he granted. Good, good. You don't have to tell me why he said it. Oh, no. I don't want this question to take longer than it needs to. He's just widening up. Just hold on. Okay, so here's my question. If, if we, if we are to review the denial of the preliminary injunction, aren't, don't we necessarily have to go back and look at that and figure out whether the judge correctly dismissed the PMPA claims? It's actually possible to review and reverse the preliminary injunction order without doing that, and the reason it's possible to do it that way is because. You really want, you really want to argue that? Don't you, don't you need us to go look at those? Well, I, we, we would, we would like you to do that, Your Honor, and we believe that's the cleanest. The standard would apply. Pardon me? Because then a different standard would apply. A different standard would apply. Right. Although, we believe that even under, you know, Winter, as interpreted by Hernandez, that we've entitled to preliminary. Let's assume that we don't agree. I mean, that's, don't we have to, to go back and address the dismissal of the PMPA? Well, we're respectfully requesting that the Court do so, but I would be remiss not to point out, as we did in our briefs, that the District Court also held that the license location fee agreement, which has a 10-year term, was an integral part of the contract between Sinclair, between Sinclair and Can-Am, even though Sinclair did not sign the sub-license between Glovis and Can-Am. And that contract has a 10-year term. It doesn't at least not to Can-Am until after the termination has supposedly occurred. The first notice to Can-Am was December 20th. Can I cut to the chase? What we've got here is an appeal from a denial of preliminary injunction. And the denial of preliminary injunction issue, the only issue addressed by the Court, was the preliminary injunction request under the state law CPA slash FIPA. That is to say, the Court was not directly addressing anything having to do with the PMPA. How do I get to any question dealing with the PMPA, which is what I want to get to, because I think the District Court made a mistake in interpreting the PMPA. Well, Your Honor, we respectfully contend that the Court has pendant jurisdiction to review the Rule 12b-6 order, not in its entirety, but simply its conclusion that the PMPA doesn't apply. And the standard, of course, is set forth not only in the Supreme Court's decision in Swint, but also this Court's decision in Arc of California. And the issue is whether the pendant claim, the Rule 12b-6 claim, is inextricably intertwined with the preliminary injunction order. Right. So that's the part we know. So could you apply that rule for us, please? I can. And they are inextricably intertwined here for a number of reasons. Yes, of course, the standard for a preliminary injunction is different than the standard for a Rule 12b-6 motion, but the rationale of both decisions is, to use the Court's words in Arc of California, self-same reason. But for the Court's finding that the PMPA did not apply, there would have been no basis for granting a preliminary injunction in favor of Sinclair, and no basis for denying. Well, but we're only at the motion to dismiss stage here. We have no idea what the evidence would be at a preliminary injunction hearing. So I'm not sure that we need to get to who should win at a preliminary injunction hearing stage. The issue for me is the judge, in part, denied the preliminary injunction because he didn't think you had it. You had stated a claim under the PMPA. If you have, we ought to go back to the judge and say, okay, that's not a reasonable basis for denying. Go conduct whatever proceedings you need to conduct with respect to the PMPA claims. I'm not sure we can conclude at this point that you should win under those claims or that there's no basis for not granting Sinclair's motion. All we know is that the judge refused to address those claims at the preliminary injunction stage, right? And the Court doesn't need to decide that at this point. So let me ask to those claims. Let's cut. I want to cut. Judge Fletcher is trying to cut to the chase, so I'm going to try to cut to the chase too. Let me give you a thesis. And with respect to Glovis, as I read the statute, it requires that Glovis obtain gasoline from the refiner, which is to say Sinclair. And everybody agrees that's not the case here. So why wasn't the judge correct in dismissing your claims against Glovis? The PMPA claims. The PMPA claims. Well, there's no dispute that Glovis was Can-Am's distributor, regardless of where it came from. Oh, great. They're a distributor, and as I read this statute, which is not the easiest statute in the world to read, but that's what we get paid for, I think the statute says that they think the statute is fairly read to say with respect to a distributor he's not such a refiner who signed a contract, but a distributor, he has to obtain his gasoline from the refiner in order for the statutory definition to apply. And they don't in this case. So focus only on Glovis, not on Sinclair. Why wasn't the district court right? Well, the statute doesn't say that, with all due respect, Your Honor. And it has not been interpreted that way, and in fact, if you were to fill up your car with Sinclair gas in California, it's refined by Union 76. You know, oil companies authorize. What difference does that make? I don't care what gas goes in my car when I fill it up. I'm asking you what the statute says. And the statute, the last clause of the statute seems to squarely apply to your situation, to this situation, which is to say the distributor is the person you're suing, and the distributor doesn't get motor fuel from the refiner. The distributor has to be licensed to use the refiner's trademark. Of course.  That's a requirement. Regardless of where it comes from. But doesn't it say something more? It says, or by a refiner which supplies motor fuel to the distributor. The licensing part by the refiner, we understand. But doesn't the refiner also have to supply motor fuel to the distributor? Well, in this case, of course, we haven't asked the district court, or this court, to decide who the franchisor was under the PMPA. It could have been Sinclair. We're not dealing with Sinclair. You may have a great argument about Sinclair. I'm asking about Glovis. And the district court, this is what the district court ruled. The district court said, I read this statute as required. Now, you may have misread it with respect to Sinclair. But I read this statute as requiring that the distributor obtain his gas from the refiner. And tell me why he misread the statute. The statute requires simply that the contract be for the supply of motor fuel. It clearly was. And the distributor in this case, Glovis was identified in all of the contracts as the distributor. And Glovis recognized that it was subject to the PMPA. In fact, the notices that it sent to Can-Am included the notice required by the PMPA. But doesn't your interpretation simply read the final clause, which begins, or by a refiner, out of the statute? No, Your Honor, because the statute applies regardless of who actually supplies the motor fuel. And what every decision applying the PMPA until now, until this one, has said is that it is the license to use a refiner's trademark that determines the existence of a PMPA. So your answer to my question is yes, your interpretation does read the final clause out of the statute. Well, the way the statute has been interpreted by every other court that we're aware of. Okay, and they may all be right and I may be wrong, but I'm asking a very specific question. What purpose is the final clause in the statute under your interpretation of it? The final clause being that... Or by a refiner which supplies motor fuel to the distributor which authorizes or permits such use. The statute and the contracts between the parties allow them to use agents to... Absolutely, we all agree about that. And that's what they do, and so... I'm just trying to figure out whether they meet the definition of franchise under the statute. And the statute has a provision defining what a franchise is. And the last clause, if it doesn't apply to Glovis, would never apply to anybody, would it? Would it apply to anybody? Yeah, I mean it would be completely unnecessary. No, it wouldn't apply to anybody. It applies only to a distributor like this one that had a license from a refiner, in this case Sinclair, to sell motor fuel. But the last clause also requires that the refiner supply motor fuel to the distributor. And so I'm trying to figure out, under your reading of the statute, do those words have any meaning? The refiner can allow a third party to supply... Of course he can. That's not the question. The question is whether or not that meets the definition of a franchise under this statute. They're allowed to set up their arrangements however they want. I'm just trying... I'm not sure you're helping me get past my concern that I think Glovis is in a different situation than Sinclair. Well, in this case, Sinclair controlled the license, controlled the trademark, and rather than supply the motor fuel itself, allowed Glovis to buy the fuel from a third party because Sinclair at the time did not have refining capacity in the P&W. Just as a factual matter, Glovis is always delivering fuel that is not Sinclair fuel. Well, the fuel was never refined by Sinclair, but the fuel also was never actually delivered by Glovis either. And when the parties signed the contract, they agreed that a third-party distributor here in the Pacific Northwest could deliver the fuel. Glovis collected millions of dollars for it, but it never actually delivered the fuel. And the contract also said, and this is unusual, but it says this, it says that the sublicense will remain... or the sublicense obligates Can-Am to buy motor fuel from Glovis only while Glovis is actively involved with the arrangement. So if Glovis were no longer actively involved, Can-Am could still purchase from the same local distributor and the contract would remain in place. And that's exactly what happened here after Glovis breached and stopped performing in July of 2023. Did you want to save any time? Because you're out of time. I saved reserve time for rebuttal. But you didn't. You just went through it. So I'm going to ask you to stop there. I'll ask you to stop there, and we'll put two minutes on the clock when you come back. All right, wonderful. Thank you, Your Honor. May it please the Court. I'm Abby Reisner. I will be using ten minutes of our time, and Glovis' counsel will use the remaining five minutes of time. The district court correctly entered a preliminary injunction here, and I hear a lot of interest about the PMPA. But before we get into that interesting topic, and I understand I'm a PMPA lawyer. It's interesting. I want to address why the appellant is trying to shoehorn in an earlier order that is not properly on appeal at this time. They belatedly addressed it in their reply motion, but did not even initially acknowledge the issue of pendant jurisdiction. And before we get there, we know that's happening because KNAM has already complied fully with the injunction. KNAM removed... That makes it tough to sort of rewind the hands of time, but we are where we are. And if we think there was a real mistake made in the motion to dismiss, what do we do? Well, and that's... Let me get to that. Because the issue is, this court can only exercise pendant jurisdiction, and you have discretion to do so or not do so, if it falls within SWIN's inextricably intertwined standards. So let me pose the same issue I did to your friend. Sure. The district judge says... I'm at the preliminary injunction stage now. Forget... He said... The judge says, forget about the PMBA claims. I've already dismissed them, so I'm not worried about them. And now I'm only going to worry about these other claims. Let's assume that the judge was wrong. We all want to get to that issue in dismissing the PMBA claims. Isn't... Isn't the validity of those claims inextricably intertwined with his reasons for turning down the preliminary injunction? It's not, and here's why. First, if you set aside their characterization of the preliminary injunction order and actually look at it, it's what you're saying, Your Honor. He, the district court, simply recognizes that the PMBA claim has already been dismissed. He adds a footnote noting that no one submitted supplemental briefing following that dismissal that occurred months earlier before this preliminary injunction order. They are not inextricably intertwined under the long line of cases where this court has exercised pendant jurisdiction because there are different legal standards. And your law says that if different legal standards have to be applied, it's not inextricably intertwined. So let's talk about what that different legal standard is. First, under the preliminary injunction, he was applying a Rule 65 winter test. That's the legal standard. At the MTD stage, at the Rule 12b6 stage, it was a plausibility, Twombly-Iqbal standard. Completely different standard. If you add in an additional layer of the PMBA, that again adds an entirely separate legal standard that would have to be analyzed. Isn't the problem that if the claim had not been dismissed at the motion-to-dismiss stage, then when he went to the preliminary injunction stage, he wouldn't have been applying the winter standard? If the PMBA issue claim had still been live at the preliminary injunction stage, he potentially would have been applying a different standard, but it wasn't. But isn't that way they're intertwined? Isn't that the problem? At the top of the decision tree when we get to the preliminary injunction stage, if we think that the claim shouldn't have been dismissed at the 12b6 stage, it seems to me there's a problem. And we don't know what the judge would have done had the other standard been applied. But that essentially is saying that any time a court subsequently in a case reaches a summary judgment point, a Daubert point, a motion eliminated point, that they have to pause and reconsider the legal framework for issues that have previously been dismissed, and that simply isn't what inextricably intertwined means. These cases from the court, Hilton and Armstrong, have said that if the court can consider and make clear that the properly appealable order can be resolved, that's the preliminary injunction order here, without resolving the pendant order, they are not inextricably intertwined. You can... But that's my problem. It can't be resolved if in fact... So let's assume that the judge did exactly what he was supposed to do with respect to the non-PMPA issues and therefore issued a preliminary injunction. But if in fact that preliminary injunction should not have been issued if the PMPA applied, then aren't they inextricably intertwined? They're not, again, because they're applying... They would be requiring application of different standards. Your question... That's right. That's the point. Your questions earlier highlighted this when you were talking to him about the PMPA claim was at the motion to dismiss phase. Again, that's a plausibility standard. He wasn't finding anything. No, I understand. He was interpreting a statute, counsel. He was interpreting a statute. He was interpreting a statute. That's right. And we do that de novo. Maybe it would be helpful because you're... You used up a lot of your time on pendant jurisdiction and I appreciate the arguments, but let's assume we get to the merits of the claim against Sinclair. The judge said the claim against Sinclair fails because Sinclair didn't supply motor fuel to the plaintiff. And it seems to me that when we deal with Sinclair, who would be such a refiner under the definition, the last clause, which is the only clause that talks about supplying motor fuel, doesn't apply. Could you address that? Are you referring to the questions that you were asking Appellant? Well, no, I was asking him a different... I was asking him with respect to Glovis. Now I'm asking a question with respect to Sinclair, which is the refiner. And the... As I read the statute, because the last words before the phrase that begins or by a refiner talk about such refiner, that's a refiner with a contract. And the district court found there was a contract between Sinclair and the plaintiff. And so... And it was a contract under which they could use your trademark. And so it seems to me that the statute therefore applies without any requirement that you also supply them with fuel. Tell me why I'm wrong. You're wrong because, one, we have to keep in mind that when you say he found there was a contract, what he found, if you look at the language in the Rule 12b-6 order, was that if the allegations are proven to be true...  You're right, I'm sorry. It's a plausibility. I'm sorry, plausibly fled a contract. You're right. And so that assumes a lot of facts. And again, this really emphasizes why are we taking up this issue now? We're not saying that they can't appeal the PMPA order. But don't... I asked you to forget about pending jurisdiction. No, no, no. The district court found there plausibly was... They plausibly pleaded a contract. And I'm asking you why a contract to use the trademark. I'm asking you why under the definition in the statute that's not enough to make a plausible allegation that Sinclair is a franchisor. Because the PMPA does not establish a relationship between the refiner and the third-party three-tier relationship and the retailer. Yeah, but you're arguing that there's not a contract. See, the district court said they've plausibly pled that you entered into a contract with them through this various web of... He may have been wrong on that, but we can't review it. I mean, we have to review it if we take this issue up. And so, if he was right about that, then isn't it clear that there's not an additional requirement under the statute that you supply fuel? Under... To them? Which was the basis for his ruling. Under 2801, if there is a contract and the refiner is permitting or authorizing the use of the trademark in the connection with the sale or distribution of motor fuel... Right, right. ...which the district court concluded we were not... So that's what I'm getting. The district court concluded that the sale or distribution... The in connection with language implied that it had to be your gasoline. Correct. So now, let's take the last clause. The last clause actually talks about supplying from the refiner to the distributor. And so, I don't understand how we can read the former clause as also importing that requirement. Well, it's the language that the district court highlighted about in connection with the sale, consignment, or distribution of motor fuel. You know, there's a number of cases that talk about the essence of a franchise relationship, a PMPA franchise relationship, is a contract for the sale or distribution of motor fuel. That's Kermani. The Burke Oil case, I believe district court also cited, talks about a contract for the distribution of motor fuel. 28011B talks about a contract pertaining to supply of fuel. And so, that's further down  Because those were the facts in those cases. But, is there any case that says that it's not a franchise if the contract allows somebody else to bring the fuel to you, but you allow them to use your trademark? Well, the Burke Oil talks about that it requires the distribution of motor fuel. Well, but there is the distribution of motor fuel. That's not the issue. The question is, is there any case that supports your position that this doesn't mean it is not a franchise if, although you give them permission to use your trademark, your contractual obligations with them provide that the fuel is going to be supplied by somebody else? Bill, this is an unusual situation in the PMPA context, so I will acknowledge that there are not a lot of cases in this context. The Lasko case, actually cited by the appellant, however, notes that under a literal reading of the statute, the PMPA, a franchise could be said to exist between a retailer and a distributor only if an oil refiner whose trademark is being authorized for use actually supplies motor fuel. I like to consider that we take literal readings of statutes, right? That's our job. And so that is how the Lasko court interpreted the provision you're talking about.  you're out of time. Thank you. Thank you. We appreciate your help. Good morning. May it please the court, Ryan Bollins for Globus America Inc. So starting with the pendant jurisdiction, the threshold issue raised on appeal here is, did the district court commit error in ruling on the injunctive orders? And here, that question can only be determined it did not. Appellant's proposition is, was it error for the district court to not apply a PMPA standard for injunctive relief when there were no PMPA claims alive in the case? That is not, that there's no error there. There cannot be, based on the posture of the case and the  that existed. That makes clear the only basis, the real motivation for this appeal is to  the interlocutory ruling on the 12B6 orders. And Swint V. Chambers explicitly discourages the use of this practice to exercise pendant jurisdiction. So the policy reasons alone dictate that it would not be inappropriate to exercise pendant jurisdiction. What's the status of the litigation in the  court? How far away are we from final judgment? Discovery closed yesterday. So I think the next deadline is coming up are dispositive motions. A trial date set? Trial is off the top of my head. I don't know the date. March. Yes. March. Of next year. Yes. Okay. Sorry, Your Honor. So understanding that the policy would not dictate taking up the interlocutory ruling at this juncture, even turning to the scenarios on the Armstrong matter that dictate when the exercise of pendant jurisdiction would be appropriate, they're still not satisfied here. The first scenario in which the two issues are inextricably intertwined, they're simply not because we're kind of confusing what that means.  injunctive orders, did the  commit error by not applying PMPA standard when there are no PMPA claims? That's a simple issue that can be resolved in about four seconds. That's   I'm not sure you're right. All right, Your Honor. The second issue, the interlocutory 12B6 orders, as  noted, that is an Iqbal and  determination in the pleading requirements for a colorable PMPA claim. The analysis and issues are entirely different. An appellant wants us to operate under the  that inexplicably intertwined means that an earlier ruling has an  on a subsequent ruling. And that is not how inexplicably intertwined is determined or interpreted and applied. I'm sorry, Your Honor, you have a question. Oh, and applied. If that were so, there would be countless initial interlocutory rulings that folks could just bring up through raising appeals on collateral orders to challenge them. I'm just saying ruling one in a case, an interlocutory ruling subsequently impacted the course of  downstream. That's not how it's interpreted. So your argument is that even if the  erred in dismissing the PMBA claims that doesn't necessarily mean he was wrong in his  injunction hearing because we don't know that even if they stated a claim whether they would have been sufficient to alter the preliminary injunction ruling.  Your Honor, you're trying   the issue raised on appeal on the injunctive order. And the answer to that question has already been answered essentially alluded to by the court. It would not because we don't know. We could not prove or you need to do whether it's an ordinary standard or whether it's a PMBA standard for granting the relief. Would it make a  or could it make a difference to the judge's analysis and the  that's in front of us a different understanding of the PMBA? Because my view I'll just say it frankly is I think the judge missed the PMBA. I  if he interpreted it properly would that affect the question in front of us?  think it's a fair point your  and I certainly think it could open the possibility but under the  court's order on the preliminary injunctions it certainly would indicate that it would not under the circumstances and facts of the case that posture in which it was before the court the station had operated for X amount of time without the  well at this juncture it has the branding it continues to  getting its own fuel through space age but the standard under the PMPA is quite different the standard says the question is the hardships imposed on your side as opposed to the hardships imposed on his side and that's not that's a really different analysis than the  yes your honor I think we could all agree it is a different analysis and frankly it's a lower burden under the PMPA but the court's  under in its injunctive order makes clear it doesn't just rest on ah K&M did not sustain will not sustain     K&M sought at that juncture thank you counsel you're well over your time so I'm going to ask you to stop there we'll just hear two more minutes rebuttal please thank you your   just a question for you that may seem like it's out of left field why didn't instead of taking this appeal why didn't you ask for an order from the district court to stay pending appeal that took a day or two and so here we are but what I'm  do is figure out how we get a decision with respect to the PMPA from this court early enough that the PMPA  some good to the parties because I have a feeling that we as a  might disagree with the district judge's  as to the PMPA all we're trying to do is preserve the  quo so could be that kind of ship has sailed that's the other part of the problem at this point it is but the PMPA jurisprudence including this court we're  to  the status quo when the case was filed what would happen right now if we if we took up your suggestion and we agreed that the wrong standard was applied and we remanded what would we be handing back to the district court the court's precedent this court's precedent the court's             doubt      that the judge actually ruled on so we have no doubt that's in front of us. But that's not the question. We're asking you how is it that we can rule on the PMPA issues? They're inextricably intertwined. I stumble on that phrase too. I'm going to say joined at the hip. There were seven briefs filed before the  injunction order was issued. Six of them addressed the PMPA. Can-Am's opening brief addressed the PMPA. Sinclair's brief in support of its motion for preliminary injunction addressed the PMPA. Can-Am's    motion addressed the PMPA. Can-Am's opposition to Sinclair's motion for preliminary injunction addressed the PMPA. And Can-Am's reply brief addressed the PMPA. The only other  was due. So these are clearly inextricably intertwined. No matter how much counsel may argue to the contrary. Thank you all for your advocacy.  appreciate it very much. We're going to take this matter under advisement and stand in recess for the week. All rise. The court stands adjourned for the  Thank you.
judges: FLETCHER, CHRISTEN, HURWITZ